

BMS

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA – CIVIL DIVISION

| | |
|---|---|
| Imagos Films, LLC <br> d/b/a Imagos Softworks, <br> and Don Thacker, individually <br> Plaintiffs, <br><br> v. <br><br> Alex Thomas Mauer, <br> Defendant. | No.: 2:17-cv-02964-BMS <br><br> CIVIL ACTION <br> COMPLAINT FOR PROPERTY <br> RIGHTS INFRINGEMENT |

FILED
JUL -7 2017
KATE BARKMAN, Clerk
By_____ Dep. Clerk

### FIRST AMENDED COMPLAINT

Plaintiff hereby submits this First Amended Complaint under F.R.C.P. 15(c)(1)(C) to correct the Defendant's name. Plaintiff also adds the Verification of Plaintiff Don Thacker.

### Prosaic

Don Thacker is an artist with a dream. A dream he's had since he was nine years old. A dream of creating a retro-shooter video game franchise he calls "Starr Mazer".

In January of 2015, Don's company Imagos Softworks began a successful crowdfunding campaign[1], raising $193,566 to help fund development of the game. Don's dream was coming true.

In March of 2015, he hired Alex Mauer to create the music and sound for the game. Alex is a skilled musician who is known for her talent at creating a "retro" style of video game sound and music reminiscent of the arcades, consoles, and computers, of the 1980s.

Throughout 2015 and much of 2016, development progressed, including on Alex's music and sound contributions.

---

[1] https://www.kickstarter.com/projects/imagosfilms/starr-mazer

At some point, Alex's behavior began to change. Alex requested time off for personal and medical reasons; it was granted. Don offered myriad kinds of support to Alex, hoping that Alex would improve and return to the team. Eventually, Alex voluntarily left the development team.

Then, suddenly, Alex became demanding. Alex claimed that she wasn't paid and that she had rights to Starr Mazer and others of Plaintiffs' Works. Don tried to resolve the matter, making several offers to Alex. Alex didn't seem interested in any resolution whatsoever.

Alex made the dispute known to Plaintiffs' business associates, damaging their relationship. Alex persisted in causing turmoil and upset, eventually causing financiers to place funds on hold, further causing the rest of Plaintiffs' development team to also place development on hold in December of 2016. Don continued to try and find a private resolution with Alex.

In June of 2017, Alex began issuing numerous copyright takedown notices under the Digital Millennium Copyright Act, claiming ownership to Plaintiffs' games and related video and audio content. To date, over 70 items have received takedowns. As a result, Starr Mazer itself, and related video content reviewing and playing Starr Mazer, has been completely removed from the internet (including popular sites like Youtube[2] and Steam[3]).

These takedown notices are in violation of Plaintiffs' rights. Alex was a contributor to a larger audiovisual work, under written contract, and with an express work-for-hire clause. Plaintiffs' video games and related content are therefore entirely Plaintiffs' property.

Plaintiffs and other non-parties are currently being damaged by Defendant's illegitimate copyright claims and takedown notices. Some of this damage is irreparable. Some of the irreparable damage is severe.

---

[2] https://www.youtube.com/ is a host of online videos.
[3] http://store.steampowered.com/ is an online store for video games and software.

Plaintiffs bring this action primarily to adjudicate their rights to the Starr Mazer franchise so that they may continue to pursue their dreams.

### Introduction

1. This matter arises primarily under the United States Copyright Act of 1976, as amended, 17 U.S.C. §§ 101 et seq. (the "Copyright Act").
2. Defendant has asserted, and continues to assert, numerous copyright claims on works owned by Plaintiffs.
3. Defendant's illegitimate claims have resulted in Plaintiffs' works being removed from online sales and marketing platforms, causing irreparable harm and as well as severe monetary damage to Plaintiffs.

### Jurisdiction & Venue

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question); and 28 U.S.C. § 1338 (patents, copyrights, trademarks and unfair competition).
5. This Court has supplemental jurisdiction over the related claims based on Pennsylvania state law pursuant to 28 U.S.C. § 1367.
6. Venue in this district is proper pursuant to 28 U.S.C. § 1391(b) and 28 U.S.C. § 1400(a) as the Defendant is believed to reside in this district.

### Plaintiffs

7. Plaintiff Imagos Films is a Limited Liability Company formed under the laws of the State of Washington and doing business as Imagos Softworks (hereinafter "Imagos").

8. Plaintiff Don Thacker is an individual residing in the State of Washington and a co-owner of Imagos Films.

### Defendant

9. Defendant Alex Thomas Mauer is an individual believed to reside at 850 Station Ave Apartment A3, Bensalem, PA 19020.

### Factual Background

10. Since at least 2010, Defendant has worked on-and-off as an independent contractor for Plaintiffs Don Thacker and Imagos.

11. Since at least 2010, Defendant has always worked in a work-for-hire arrangement with Imagos and/or Don.

12. Since March of 2015, Defendant has worked on Plaintiffs' Starr Mazer franchise nnder a written agreement that was executed by Imagos and Defendant (hereinafter the "Agreement"). This Agreement is attached as Exhibit A.

13. The Agreement specifies that Defendant works for Plaintiff within a work-for-hire arrangement regarding the copyright on Defendant's contributions.

14. The work-for-hire Agreement means that Plaintiff owns all of the copyrights to the Defendant's contributions.

15. Since at least some time in 2016, Defendant has asserted claims to Plaintiffs' copyrights in the Starr Mazer franchise and related content.

16. Defendant has made these claims in violation of the Agreement and in interference with Plaintiffs' business relationships and other rights.

17. Since at least some time in June 2017, Defendant has asserted claims to copyrights on Starr-Mazer-related content owned by both parties and non-parties.

18. Defendant asserts these claims through writings as well as legal notices to third-parties.

19. Defendant has asserted <u>over 70 false claims</u> to copyrights on Starr-Mazer-related content owned by both parties and non-parties.

20. Most, if not all, of Defendant's copyright claims come in the form of DMCA takedown notices.

21. Defendant's claims almost always result in the content being removed from public access and view while the DMCA procedure is followed.

22. Defendant's illegitimate claims have caused and continue to cause severe and irreparable damage to Plaintiffs as well as non-parties by interfering with their personal and business relationships as well as their copyrights and other rights.

### Direct Threats to Plaintiff and Counsel

23. Beginning June 26, 2017, Defendant began making threatening remarks and gestures towards Plaintiff Thacker and Plaintiffs' counsel.

24. These threats were delivered via email, Twitter, and direct message communications.

25. These threats from Defendant quickly escalated to express threats of murder, arson, and vandalism.

26. Plaintiffs' counsel's Duty to Warn was triggered and the threats were reported to the appropriate authorities.

27. Defendant was taken into custody on June 29, 2017 by said authorities for involuntary mental health evaluation.

### Miscellaneous

28. All conditions precedent to bringing this action have occurred or been waived.

29. Plaintiffs have retained counsel and are obligated to pay said counsel a reasonable fee for their services.

## COUNT 1
### Copyright Misrepresentation Under 17 U.S.C. 512(f)

30. Plaintiff Imagos is the owner of the copyright-in-suit on its properties titled "Starr Mazer" and "Starr Mazer: DSP" (hereinafter the "Works"). Plaintiff's Work is an original work of authorship.

31. Defendant has asserted numerous illegitimate claims on Plaintiffs' Works.

32. Defendant asserts these numerous illegitimate copyright claims on Plaintiff's Works in violation of 17 U.S.C. 512(f) regarding willful and knowing misrepresentations.

33. Defendant knows, should know, or is willfully ignorant, of her work-for-hire Agreement with Plaintiffs Imagos and Don Thacker.

34. Defendant is liable for the actual damages of her illegitimate claims.

35. Plaintiff will prove actual damages at trial.

## COUNT 2
### Breach of Contract

36. Plaintiffs Imagos and Don Thacker entered into an Agreement with Defendant in March 2015. (Ex. A).

37. The Agreement expressly specifies a work-made-for-hire arrangement between the parties to the Agreement.

38. The Agreement expressly requires Defendant to keep Plaintiffs' confidential information secret.

39. Defendant has knowingly and publicly claimed ownership to Plaintiffs' copyrighted Works in breach of the Agreement.

40. Defendant has publicly revealed Plaintiffs' confidential information in violation of the Agreement.

41. Defendant has breached her duties to Plaintiffs under the Agreement.

42. Plaintiffs have been, and continue to be, severely and irreparably damaged by Defendant's breach.

43. Defendant is therefore liable for actual, special, and extra damages to Plaintiffs.

44. Plaintiffs expect to prove damages at trial.

### COUNT 3
### Defamation *per se*

45. Defendant has made serious and public claims of ownership to Plaintiff's copyrighted Works.

46. Defendant has made serious and public allegations of misconduct in Plaintiff's business dealings.

47. Plaintiffs have been seriously and irreparably damaged by Defendant's false claims and false allegations of business misconduct.

48. Defendant's actions constitute Defamation *per se* under Federal and Pennsylvania law.

49. Plaintiffs expect to prove damages at trial.

### COUNT 4
### Extortion/Blackmail
### Interference with commerce by threats or violence
### under 18 U.S. Code § 1951 and Pennsylvania Law

50. Defendant has made public statements that her actions are the result of a contract dispute with Plaintiffs.

51. Plaintiffs have gone above and beyond to attempt to settle the matter with Defendant for at least a year.

52. Plaintiffs do not believe that Defendant has a legitimate claim at all, but have still made numerous offers in settlement.

53. Defendant has made false claims to Plaintiffs' property, sometimes obtaining property or rights to property by consent.

54. Any consent by Plaintiffs was induced by wrongful use of actual or threatened force, violence, or fear, and under color of an official claim to Plaintiffs' property.

55. Defendant has used her false claims to encourage more favorable offers of resolution from Plaintiffs.

56. Defendant has made direct threats of serious bodily injury to Plaintiffs and their counsel.

57. Defendant's actions therefore constitute illegal extortion under 18 U.S. Code § 1951.

58. Defendant's extortion is reachable civilly via Federal and State extortion and blackmail law.

59. Plaintiffs to prove damages at trial.

## PRAYER FOR RELIEF

60. Plaintiffs respectfully request this Honorable Court grant the following relief:

    i. a Temporary Restraining Order requiring Defendant to cease all threats and intimidation efforts toward parties in and for the duration of the case;

    ii. a Preliminary Injunction to stop further illegitimate copyright claims from Defendant during the litigation and trial processes;

    iii. a Permanent Injunction enjoining Defendant from filing additional Copyright claims against Plaintiffs;

    iv. a Declaratory Judgment finding Plaintiffs to be the legitimate owners of the relevant copyrights in their respective works;

v. a Judgment for actual damages against Defendant in amounts to be proven at trial;

vi. a Judgment for special and/or extra damages against Defendant in amounts to be proven at trial;

vii. and other relief the Court may deem necessary and/or appropriate.

Respectfully Submitted,

*/s/leonardjfrench*
Leonard J. French, Esq.
PA ID: 312413
442 Hamilton St #9125
Allentown, PA 18105
P: 610-537-3537
F: 888-262-0632
E: ljf@leonardjfrench.com
*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, as well as providing a copy of this document by email to defendant at alexmauermusic@gmail.com by previously granted consent (ECF Doc. 3, Affidavit of Service Exhibit A) under F.R.C.P. 5(b)(2)(E).

Respectfully Submitted,

*/s/leonardjfrench*
Leonard J. French, Esq.

FILED
JUL -7 2017
KATE BARKMAN, Clerk
_____ Dep. Clerk
By_____

## VERIFICATION

I, Don Thacker, declare as follows:

1. I am a Plaintiff in the present case and co-owner of Imagos Films (d/b/a Imagos Softworks).

2. I am the representative authorized to enforce Imagos' rights, including intellectual property rights.

3. I have personal knowledge of the facts and allegations set forth in the foregoing Amended Complaint and the previously-filed original Complaint and, if called to testify, I would competently testify as to the matters stated herein.

4. I have personal knowledge of myself, my activities, and my intentions, as well as those of Imagos, in the foregoing matter, and, if called to testify, I would competently testify as to the matters stated herein.

5. I verify, under penalty of perjury, that the foregoing is true and correct, under 28 U.S. Code § 1746.

Executed on:  
**07/07/17**

Don Thacker:  
**Don Thacker**

Signature: *Don Thacker (Jul 7, 2017)*

Email: don@imagossoftworks.com

FILED  
JUL -7 2017  
KATE BARKMAN, Clerk  
_____ Dep. Clerk  
By_____

# First Amended Complaint

Adobe Sign Document History                    07/07/2017

| | |
|---|---|
| Created: | 07/07/2017 |
| By: | Leonard French (ljfrench@leonardjfrench.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAr6SED3oYw4TDjiFeQaILQQ-LywTjgFtt |

## "First Amended Complaint" History

- Document uploaded by Leonard French (ljfrench@leonardjfrench.com) from Acrobat
  07/07/2017 - 1:18:36 PM EDT - IP address: 64.121.39.248

- Document emailed to Don Thacker (don@imagossoftworks.com) for signature
  07/07/2017 - 1:18:38 PM EDT

- Document viewed by Don Thacker (don@imagossoftworks.com)
  07/07/2017 - 1:19:11 PM EDT - IP address: 173.10.101.206

- Document e-signed by Don Thacker (don@imagossoftworks.com)
  Signature Date: 07/07/2017 - 1:19:57 PM EDT - Time Source: server- IP address: 173.10.101.206

- Signed document emailed to Don Thacker (don@imagossoftworks.com) and Leonard French (ljfrench@leonardjfrench.com)
  07/07/2017 - 1:19:57 PM EDT

FILED
JUL -7 2017
KATE BARKMAN, Clerk
By_____ Dep. Clerk

Adobe Sign



## FREELANCE CREW DEAL MEMO

PRODUCTION COMPANY: Imagos Softworks

FILM TITLE: Starr Mazer

START DATE: 03/01/2015

POSITION: Music Director

FREELANCE CONTRACTOR NAME: Alex Mauer

ADDRESS: ▮▮▮▮▮▮▮▮▮▮ Washington Crossing, PA 18977

PHONE: 215-▮▮▮▮

EMAIL: ▮▮▮▮▮▮▮▮▮▮

SOCIAL SECURITY / FED I.D. NUMBER: ▮▮▮▮

EMERGENCY CONTACT:

---

*(Items below to be completed by production company only)*

COMPENSATION: $40,000 (all in; see terms)

RENTALS:

SCREEN CREDIT: Music Director

OTHER TERMS: 26 Bi-Weekly payments of $1500; 27th Payment of $1000 for a total of $40,000. First payment by Friday March 15th, 2015. Payment covers 40/hrs/week for 54 weeks.

TERMS AND CONDITIONS OF EMPLOYMENT

*FILED JUL -7 2017 KATE BARKMAN, Clerk By ▬▬▬ Dep. Clerk*

*[signature] 3-9-15*

**SERVICES:** Contractor shall render services hereunder from the Start Date, which are usual and customary of the services required of a person employed in this capacity in the film industry, and shall render such services exclusively to Production Company thereafter through the completion of Contractor's services as determined by Production Company. Contractor's services in the position stated above shall be rendered to the best of Contractor's ability and as Production Company directs in its sole discretion, including, without limitation, all matters of taste and judgment.

**RISK:** Contractor hereby understands that the Production Company can see no risk presently, and that the Contractor takes full responsibility for his or her involvement in the Production and the risks that it may entail (be they legal, physical or mental).

**RENTALS:** Contractor's kit rental and equipment is the sole responsibility of Contractor. Production Company assumes no responsibility for Contractor's kit/equipment. Any rentals from Contractor must be approved by Company and must be documented at the time of hire with a rental agreement.

**PAYMENT:** In full consideration of Contractor fully performing his/her obligations under this agreement, Production Company agrees to compensate the Contractor at the rate listed above. Contractor will provide hours/days of work completed and submitted to Production Company and Payroll Company with forms provided. Compensation will be made to the Contractor upon completion of the timecard or sent invoice. Continuation of services payment, including all scheduling beyond that which is guaranteed as well as overtime expenses incurred, will be considered but not guaranteed unless explicitly and specifically agreed upon. Deferred Wages shall be paid to the employee upon completion and sale of the film, only after all vendors are paid in full, all investors are returned their original investment money, and before profits are distributed. Payment is made on a 30-day pay cycle.

**IMMIGRATION REFORM AND CONTROL ACT OF 1986 (IRCA):** Employment (or the engagement of services) hereunder is subject to Contractor providing the requisite documents required by IRCA and completing and signing the required Form I-9 pursuant to IRCA Section 274a.2. Contractor shall comply with the immigration verification employment eligibility provisions required by law.

**TRANSPORTATION:** Transportation to and from the locations at which Contractor's services are to be rendered in connection with the Production is the Contractor's sole responsibility. If Contractor shall provide his own transportation to and from the locations at which Contractor's services are to be rendered in connection with the Production, and/or if Contractor uses his own vehicle in connection with the Production, then Contractor further agrees that any personal vehicle used will be adequately insured for collision damage, liability damage and property damage belonging to third parties, all in such amounts as are reasonably necessary. Contractor agrees to provide Production Company with proof of insurance and valid driver's license if requested. Contractor hereby indemnify Production Company and Production Company's representatives against any and all liability and claims whatsoever in connection with Contractor's automobile or transportation during the term of this agreement.

**ALCOHOL/DRUGS:** Use of alcohol or drugs during hours of employment will result in Contractor's immediate termination.

**PURCHASES:** All items purchased for the Production, whether directly or indirectly, by the Production Company, shall remain Production Company's property unless otherwise explicitly agreed upon in writing. All purchases and rentals must be Purchase Orders. Purchase Orders must be approved by Production Company or Production Company's representative prior to any financial commitment on behalf of the Production Company unless explicitly agreed upon in writing. All out of pocket expenses incurred in connection with the Production will be reimbursed only to the extent that they are pre-approved by Production Company or Production Company's representative and verified by original receipt. There will be no exceptions. Copies of receipts (pictures are acceptable) are to be emailed to Production Company.

*[signature]*
3-9-15

**PETTY CASH:** If Contractor is given a petty cash float, Contractor is responsible for returning receipts, remaining cash, or a combination thereof upon completion of the job. Contractor authorizes Production Company to deduct from Contractor's final payroll check any outstanding balance in Contractor's petty cash advance fund and any costs of repair or replacement of any equipment assigned to Contractor accrued as a result of Contractor's negligence. The Production Company shall in no circumstances reimburse parking tickets and/or other parking or traffic fines.

**PRODUCTION COMPANY EQUIPMENT:** If Contractor is assigned a walkie-talkie, cell phone, or any other equipment, Contractor shall be responsible for returning same to Production Company in good working order.

**CELL PHONE:** Cellular phone charges will not be reimbursed by the Production Company unless arranged in advance with prior written approval from the Production Company.

**SCREEN CREDIT:** The screen credit, accorded to Contractor hereunder shall be granted and positioned at Producer's discretion. No casual or inadvertent failure to accord such credit, nor any breach of any third party contract with Producer concerning such credit shall be a breach hereof by Production Company.

**TERM:** Unless expressly provided elsewhere in this agreement, Contractor's employment hereunder shall not be for a "run of the show" or for any guaranteed period of employment. Production Company reserves the right to discharge Contractor at any time, subject only to the obligation to pay the balance of any guaranteed compensation due provided that Contractor is not in material breach of its obligations hereunder. Production Company will attempt to notify Contractor a minimum of twenty-four (24) hours in advance of layoff. Use of alcohol or drugs during hours of employment will result in Contractor's immediate termination. This agreement is subject to immediate suspension and/or termination (at Production's election) without further obligation on the part of Production Company in the event of any incapacity or default of Contractor or in the case of any suspension, postponement or interference with the Film's production by reason of labor controversy, strike, earthquake, act of God, governmental action, regulation, or decree or for any other customary force majeure reason. The expiration or termination of this Deal Memo shall not affect the ownership by Company of the rights granted herein.

**NO WAIVER:** The terms and conditions of this deal memo are binding for Production Company and Contractor and shall not be waived or altered by any method. Any added conditions on the front of this deal memo inconsistent with these conditions of production services shall be null and void.

**WORK FOR HIRE:** Contractor's services will be performed as a specifically ordered or commissioned work made-for-hire, and Production Company shall own all results and proceeds of Contractor's services rendered hereunder in perpetuity to use for all purposes, including without limitation to the exploitation of the Picture or otherwise. This agreement may be assigned to any entity by Producer provided such entity assumes all executor obligations. Contractor may not assign this agreement. Contractor agrees to maintain the secrecy of all Producer's confidential information which comes into Contractor's possession by virtue of Contractor's participation in the Production.

**OWNERSHIP:** There shall be no ownership of control on the part of the Contractor in the Production unless otherwise explicitly expressed in writing.

**AVAILABILITY:** Contractor will advise Production Company of Contractor's whereabouts so that Contractor may be reached at any reasonable hour of the night or day during the term of this deal memo. Contractor warrants that Contractor has not entered into and shall not enter into any agreements to perform work during the term of this agreement which could in any way interfere with the rendering of Contractor's services hereunder. Production Company or Production Company's representative retains the right to terminate this agreement at any time for any reason.

*[signature]*
3-9-15

**PUBLICITY:** Company shall have the right to use Contractor's name, voice, picture and likeness in connection with the Film, the advertising and publicizing thereof, and any promotional films or clips respecting the Film, without additional compensation therefore. Contractor shall not directly or indirectly circulate, publish or otherwise disseminate any news story, article, book, blog or other publicity concerning the Film, the Contractor's or others' services, without Production Company's prior written consent. Admittance of any non-contracted guests to the set is at the sole discretion of the Production Company.

**ENTIRE AGREEMENT:** This deal memo sets forth the entire understanding of the parties regarding the subject matter and may not be amended except by a written instrument signed by the parties. Any added conditions on the front of this deal memo inconsistent with the conditions of employment detailed in the body of this agreement shall be null and void.

**NO OBLIGATION TO PRODUCE:** Production Company will not be obligated to produce or release the Film, or to use the results of Contractor's services.

**ASSIGNMENT:** Production Company shall have the right to transfer or assign its rights and obligations pursuant to this deal memo to any other person, firm, or corporation, and upon such assignment shall be relieved of its obligation to Contractor.

**HOLD HARMLESS:** Contractor shall indemnify and hold Production Company harmless from and against any and all loss, claim, liability, judgment, cost or expense suffered by Production Company for any breach or default of this Deal Memo by Contractor.

**AGE OF MAJORITY:** Contractor hereby certifies that he or she is over eighteen years of age and is competent to contract in his or her own name insofar as the above is concerned. By signing this document I hereby confirm that I have read all of the terms and conditions outlined above and I understand and agree to all of them.

**CONFIDENTIALITY:** Contractor's name and participation may be kept confidential and not associated in any way with the finished video recordings, audio recordings, motion picture filming, photographs and printed material if it is the Contractor's wish. Contractor initials here if he or she wishes to remain anonymous _____.

A waiver of any breach provision shall not be deemed a waiver of any preceding or subsequent breach of the same or any other provision. This agreement contains the full and complete understanding between Producer and Contractor with reference to the within subject matter, supersedes all prior agreements and understandings, written or oral, and cannot be modified except by the written instrument signed by both parties. This agreement is governed by the laws of the State of Washington. This agreement is not valid until signed by Producer.

CONTRACTOR ACCEPTS ALL CONDITIONS OF PRODUCTION SERVICES WORK AS DESCRIBED ABOVE

*[Signature]*
3-7-15

**AGREED TO AND ACCEPTED:**

Date: 03/09/2015

CONTRACTOR NAME (PRINTED): Alex Mauer

CONTRACTOR SIGNATURE: *[signature]*

Date: 03/04/2015

PRODUCER NAME (PRINTED): Josh Gelb

PRODUCER SIGNATURE: Digitally signed by Joshua Gelb
DN: cn=Joshua Gelb, o=Imagos Films & Imagos Softworks, ou=Producer, email=joshg@imagosfilms.com, c=US
Date: 2015.03.04 14:46:07 -08'00'