**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA – CIVIL DIVISION**

| | | |
|---|---|---|
| Imagos Films, LLC<br>d/b/a Imagos Softworks,<br>and Don Thacker, individually<br>Plaintiffs, | §<br>§<br>§<br>§ | No.: 2:17-cv-02964-BMS |
| v. | §<br>§ | |
| Alex T. Mauer,<br>Defendant. | §<br>§<br>§<br>§<br>§ | **CIVIL ACTION**<br>**COMPLAINT FOR PROPERTY RIGHTS INFRINGEMENT** |

**PLAINTIFF'S APPLICATION FOR A TEMPORARY RESTRAINING ORDER**

Pursuant to Rule 65(b) of the Federal Rules of Civil Procedure, Plaintiffs hereby apply to this Honorable Court for a Temporary Restraining Order (TRO) to enjoin Defendant from issuing further false copyright claims and takedown notices as well as further threats of harm to Plaintiff and its Counsel.

**Application for Temporary Restraining Order**

1. Plaintiff makes this application for a Temporary Restraining Order ("TRO") to halt Defendant's false claims of copyright ownership of Plaintiffs' Works and of Works created by third-parties.
2. Defendant's illegitimate claims have resulted in Plaintiffs' Works being removed from online sales and marketing platforms, causing irreparable harm and severe monetary damage to Plaintiffs.
3. Defendant's illegitimate claims have resulted in creative Works made by third parties, that are related to Plaintiff's Works, being removed from online video and discussion platforms (such as Youtube as other web sites).

4. Defendant is making these illegitimate claims in order to coerce settlement of an alleged contract dispute with Plaintiff instead of adjudicating Defendant's alleged claims on the merits.
5. Plaintiff respectfully requests this Honorable Court grant its request for a TRO:
    a. Temporarily restraining and enjoining Defendant from issuing further copyright claims and/or takedown notices for Plaintiff's Works, including but not limited to Starr Mazer and Starr Mazer: DSP, and any related works, including but not limited to videos, podcasts, and articles.
    b. Temporarily restraining and enjoining Defendant from making further statements, or taking further actions, which threaten or intimidate another party or the Court, especially including, but not limited to, threats of serious bodily injury or harm to Plaintiffs or its Counsel.
    c. Requiring Defendant to seek the Court's approval before issuing further copyright claims or takedown notices on Plaintiff's Works or any other works, including those by nonparties.
    d. Requiring Defendant as well as any person or entity controlling any website hosting or previously-hosting Plaintiff's Works, or any works related to plaintiff's works, to <u>immediately remove any copyright claim or takedown notice</u> applied to Plaintiff's Works (especially Starr Mazer and Starr Mazer: DSP) or any related work (including but not limited to user-generated-content such as videos and live-streams.
    e. Requiring Defendant to provide notice of every copyright claim she has issued so that Plaintiff may notify those persons and entities affected by this Order.

f. Requiring defendants to show cause why this Court should not issue a Preliminary Injunction or other Order extending such temporary relief pending an adjudication on the merits; and break

g. Any other equitable relief this Hon. Court may deem appropriate and just.

6. Pursuant to F. R. C. P. 65 (b)(1)(B), Plaintiff has provided actual notice to Defendant as of the time of the making of this Application, and has provided copies of all pleadings and papers filed in this action to date. A Certificate of Counsel accompanies this motion.

7. A Memorandum in support of this TRO and a Proposed Order are filed concurrently.

WHEREFORE, Plaintiff respectfully requests this Hon. Court grant this Application by entering the Proposed Order.

Date: July 11th, 2017

Respectfully Submitted,

*/s/leonardjfrench*

Leonard J. French, Esq.
PA ID: 312413
442 Hamilton St #9125
Allentown, PA 18105
P: 610-537-3537
F: 888-262-0632
E: ljfrench@leonardjfrench.com
*Attorney for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA – CIVIL DIVISION**

| | | |
|---|---|---|
| Imagos Films, LLC<br>d/b/a Imagos Softworks,<br>and Don Thacker, individually<br>Plaintiffs, | §<br>§<br>§<br>§ | No.: 2:17-cv-02964-BMS |
| v. | §<br>§ | |
| Alex T. Mauer,<br>Defendant. | §<br>§<br>§<br>§<br>§ | **CIVIL ACTION**<br>**COMPLAINT FOR PROPERTY RIGHTS INFRINGEMENT** |

**BRIEF IN SUPPORT OF PLAINTIFF'S APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

**Table of Contents**

Introduction ........ 7

Facts ........ 8

Plaintiffs require a TRO to protect themselves from severe and irreparable harm by Defendant ........ 11

Plaintiff is suffering an Irreparable Injury ........ 11

Plaintiff shows a Substantial Likelihood of Success on The Merits ........ 13

Defendant will suffer little-to-no Hardship ........ 14

There is No Adverse Effect on the Public Interest — the Public only benefits ........ 15

The Relief sought by Plaintiff is narrowly tailored ........ 15

Plaintiff's recommended Bond ........ 15

Conclusion ........ 16

**Table of Authorities**

Bieros v. Nicola, 857 F.Supp. 445, 446 (E.D.Pa.1994).

Community For Creative v. Reid, 490 U.S. 730, 109 S.Ct. 2166 (1989).

Estate of Burne Hogarth v. Edgar Rice Burroughs, Inc., 342 F.3d 149 (2nd Cir., 2003).

J.O. v. Orange Twp. Bd. of Edu., 287 F.3d 267, 273 (3d Cir.2002).

Urbont v. Sony Music Entm't, 831 F.3d 80, 119 U.S.P.Q.2d 1619 (2nd Cir., 2016).

**Introduction**

Plaintiffs Imagos and Don Thacker bring this action to halt Defendant's falsely claiming ownership to Plaintiffs' copyrighted Works. Defendant has filed numerous false Digital Millennium Copyright Act takedown notices (hereinafter just "takedown notices") both directly against Plaintiffs' video game franchise "Starr Mazer" (hereinafter just Plaintiffs' "Works") but also against Works by Plaintiffs' customers (usually in the form of a review or "Let's Play" video[1]). (Declaration of Don Thacker, ¶¶ 2-3).

Defendant's false copyright claims have resulted in Plaintiffs' Works being removed from sale on the Steam game store, one of the largest online video game sales platforms. Defendant filed no less than four false takedown notices against Plaintiffs' Work "Starr Mazer: DSP". Defendant timed these takedown notices to remove Plaintiffs' Work from the Steam game store during Steam's largest annual sales event, the Steam Summer Sale, resulting in hundreds of thousands of dollars in lost sales. (Id. ¶¶ 4-5).

Defendant's false copyright claims are ongoing and have not stopped as of the making of this Application. (Id. ¶¶ 6).

[1] "Let's Play" is a term that describes a live or recorded published video of a person playing a game. It can be any game. The person may just be playing or may offer commentary, entertainment, or instruction. It is considered an emerging form of customer participation and brings a positive benefit to Plaintiffs.

Defendant boasts about being judgment proof and the 'effectiveness' of her false claims. Defendant claims to be motivated by an alleged contract dispute with Plaintiff over a relatively small amount of money. Yet Defendant has refused to resolve the alleged contract dispute through the courts, instead choosing to issue copyright takedown notices in coercion of Plaintiff and its customers. (Id. ¶¶ 7-8).

Defendant's takedown notices and threats of takedown notices also result in some of Plaintiffs' customers voluntarily removing their copyrighted works in order to avoid Defendant's takedowns and comply with Defendant's threats. (Id. ¶ 3).

Defendant's actions constitute false misrepresentations under 17 U.S.C. 512(f) of the Digital Millennium Copyright Act, a breach of her contract with Plaintiffs, defamation of Plaintiffs, and extortion/coercion/blackmail under various applicable federal and state laws.

Plaintiffs respectfully request this Court grant its request for a Temporary Restraining Order to halt Defendant's issuing further takedown notices and require the already-removed content be restored pending Plaintiffs' request for a preliminary injunction and adjudication on the merits.

**Facts**

Defendant is a music and sound artist most known for creating a "retro"-style of music and sound reminiscent of the arcade, console, and computer games of the 1980s. Defendant met Plaintiff Don Thacker sometime in 2009 or 2010. Over the ensuing years, the parties would work together on several projects, culminating in the project at issue in the matter. (*See generally* the Verification of Don Thacker, Amended Complaint).

In 2015, the parties signed a written agreement for Defendant to contribute the music and sound for Plaintiffs' "Starr Mazer" franchise. The agreement specified the major terms between

the parties, including payment, confidentiality, and ownership of copyright. The contract contains an explicit "work-for-hire" clause clarifying that all copyrights from Defendant's contributions are owned by Plaintiff. (Exhibit A, Imagos Contract with Defendant).

From March 2015 through approximately December 2016, Defendant made satisfactory music and sound contributions under the contract and was paid. During 2016, though, Defendant began to request time off for personal and medical reasons. Defendant ultimately voluntarily left the project. (*See generally* the Verification of Don Thacker, Amended Complaint).

Defendant was paid a total of $36,500 of $40,000 due under the contract. Defendant was not fully paid because she did not complete her obligations under the contract. (Declaration of Don Thacker, ¶¶ 10-11).

At some point in 2016, Defendant began to make claims that Plaintiffs did not fully pay her under the contract. These claims quickly escalated to claims of actual copyright ownership of Plaintiffs Works and the music and sound contained within Plaintiffs Works. (Id. ¶ 11).

Defendant made her claims publicly, including sending her claims directly to Plaintiffs' business associates. Defendant was persistent and 'loud' in her myriad messages and calls. Plaintiffs' business partners, including its development team and financing partners, notified Plaintiffs' that development and funding would be put on hold by approx. December of 2016. (Id. ¶¶ 12-13).

Plaintiffs have not been able to finish development and release their completed product since December 2016. (Id. ¶ 13).

The Steam game store allows unfinished games to be sold to eager customers and supportive fans through their "Early Access" programs. Plaintiffs' most complete Work, "Starr

Mazer: DSP"[2] was available for Early Access sale on the Steam game store until June of 2017 when Defendant made a successful copyright claim in the form of a DMCA takedown notice. (Id. ¶ 2).

Plaintiffs had been able to sell their Work on the Steam game store prior to Defendant's false takedown notices. Defendant submitted at least three takedown notices for Plaintiffs' Work, "Starr Mazer: DSP", successfully removing it from sale for several weeks. Id.

Defendant also began issuing false takedown notices in June of 2017 to customers, reviewers, and others who chose to publish videos, pictures, and/or articles about Plaintiffs' game or, subsequently, the controversy surrounding Defendant's takedown notices, which quickly became a major public controversy for Plaintiffs. (Id. ¶ 3).

Defendant continues to be almost exclusively public about her allegations and false copyright claims against Plaintiffs. Plaintiffs were forced to engage in serious public relations mitigation. (Id. ¶¶ 12, 14).

Defendant has since also revealed confidential information about Plaintiffs' Works. Particularly, Defendant has revealed major spoilers and plot points from "Starr Mazer", Plaintiffs' upcoming videogame franchise. (Id. ¶ 13).

Defendant has also begun threatening Plaintiffs and its Counsel with serious bodily injury, with murder, with arson, and with a vandalism. Plaintiffs' Counsel has had to implement heightened security measures in response. (Id. ¶ 15).

---

[2] "Starr Mazer: DSP" is, itself, the first part of a larger "Starr Mazer" video game franchise containing gameplay, story, comedy, merchandising, marketing, and derivative work opportunities.

**Plaintiffs require a TRO to protect themselves from severe and irreparable harm by Defendant**

To immediately halt Defendant's irreparable damage to Plaintiffs, this Court should issue a Temporary Restraining Order enjoining Defendant from filing further false claims of copyright ownership to Plaintiffs' Works or any Works by non-parties which are based on Plaintiffs' Works, including, but not limited to, review videos, news articles, "Let's Play" videos, and any other work that implicates Plaintiffs' copyrights.

This Court has authority to issue such an Order under Federal Role of Civil Procedure 65. This Court has subject matter jurisdiction as copyright is a federal question. This Court has personal jurisdiction over Defendant as she resides in this district.

"A temporary restraining order is a 'stay put,' equitable remedy that has as its essential purpose the preservation of the status quo while the merits of the cause are explored through litigation." J.O. v. Orange Twp. Bd. of Edu., 287 F.3d 267, 273 (3d Cir.2002). "The standard for granting a temporary restraining order under Federal Rule of Civil Procedure 65 is the same as that for issuing a preliminary injunction." Bieros v. Nicola, 857 F.Supp. 445, 446 (E.D.Pa.1994). "A plaintiff must demonstrate: (1) a likelihood of success on the merits; (2) the probability of irreparable harm if the relief is not granted; (3) that granting injunctive relief will not result in even greater harm to the other party; and (4) that granting relief will be in the public interest." Id.

**Plaintiff is suffering an Irreparable Injury**

Were it not for Defendants false claims, Plaintiffs would be currently selling and developing their video game. Because of Defendants false claims, all sales have ceased. The amount of lost sales reaches into the hundreds of thousands of dollars. (Declaration of Don Thacker, ¶¶ 17-18).

Plaintiffs expect to be able to return the game to the Steam game store but there is no guarantee that Defendant will not be able to issue further takedown notices.

Plaintiffs believe and Defendant has boasted that Defendant is judgment proof and will never be able to pay for the damage she is causing.

Plaintiffs are nearly if not actually insolvent due to Defendant's false claims. Plaintiffs require emergency intervention from the Court to ensure they don't lose their personal property, business opportunities, credit and goodwill with business partners, and other livelihood.

Defendants actions are also causing irreparable injuries to Plaintiffs' customers who have published videos, articles, and pictures. These customers have chosen to participate in social media, marketing, and other means of expression, only to be have their content removed by Defendants false claims.

Because content hosts such as YouTube or wary of their "safe harbor" the Digital Millennium Copyright Act, Plaintiffs' customers' accounts are then limited by the host automatically due to Defendants false copyright takedown notices. These channel and account owners rely on their ability to produce content which generates interest and actual revenue which they often require for basic living expenses.

Many of these customers are unable to afford to adjudicate against Defendants false copyright claims and either submit to the claims, remove the falsely claimed content, and/or simply refrain from producing further content related to Plaintiffs Works.

Defendant is therefore not just attacking Plaintiffs over a minor contract dispute. Defendant is successfully shutting down all of Plaintiff's business operations by attacking not only its core business but also its customers.

**Plaintiff shows a Substantial Likelihood of Success on The Merits**

Plaintiff has a written and fully-executed contract with Defendant regarding her work on Plaintiffs' "Starr Mazer" franchise. This contract contains a work-for-hire clause which clearly assigns all copyrights to Plaintiffs'. This is the typical arrangement regarding copyright when artists are hired to contribute to a larger audiovisual work.

Plaintiff understands that Defendant alleges underpayment for her services under the contract. Plaintiff has made various offers to Defendant in settlement of that issue. Plaintiff welcomes Defendant to properly adjudicate any contract dispute through the courts. It is improper and illegal for Defendant to claim copyright ownership in lieu of proper adjudication of the issue on the merits.

Even if Defendant has some sort of meritorious contract dispute with Plaintiffs, there is no remedy at law which allows Defendant to claim ownership of Plaintiffs copyrights. Contracts do not fail and are not void simply because one or both parties fails to fully perform a material item under the contract.

But even if the parties' contract was somehow to fail, common-law agency principles would still dictate that Plaintiff's own the copyrights to defendant's work:

> If the work is for hire, "the employer or other person for whom the work was prepared is considered the author" and owns the copyright, unless there is a written agreement to the contrary. § 201(b). Classifying a work as "made for hire" determines not only the initial ownership of its copyright, but also the copyright's duration, §302(c), and the owners' renewal rights, § 304(a), termination rights, § 203(a), and right to import certain goods bearing the copyright, § 601(b)(1). *See* 1 M. Nimmer & D. Nimmer, Nimmer on Copyright § 5.03[A], pp. 5-10 (1988). The contours of the work for hire doctrine therefore carry profound significance for freelance creators—including artists, writers, photographers, designers, composers, and computer programmers—and for the publishing, advertising, music, and other industries which commission their works."

Community For Creative v. Reid, 490 U.S. 730 at 737 (1989). *See also* Estate of Burne Hogarth v. Edgar Rice Burroughs, Inc., 342 F.3d 149 (2nd Cir., 2003) *and* Urbont v. Sony Music Entm't, 831 F.3d 80 (2nd Cir., 2016).

Works for hire can be either those created by an employee within the scope of their employment, or those created by an independent contractor as part of a larger audiovisual work. 17 U.S.C. § 101(2).

Defendant's contribution was still a smaller part of a larger audiovisual work. Even if Defendant did not have a written contract with a work-for-hire clause, Plaintiffs would still own the copyrights to Defendant's contributions.

**Defendant will suffer little-to-no Hardship**

Defendant is taking advantage of the Digital Millennium Copyright Act takedown notice procedure. The procedure requires only a written notice by Defendant and content-hosts must obey the notice or risk losing their safe harbor status. The DMCA "safe harbor" provisions protect the content hosts a long as they comply with the specified takedown procedures. Content hosts or therefore bound by the DMCA to obey even potentially false takedown notices.

Sending a false takedown notice requires no attorney, no approval, and there is no fee associated with doing so. Defendant incurs no costs by sitting at her computer and sending illegitimate takedown notices.

Defendant further claims, publicly via her Twitter account, that she is judgment proof and is not going to ever going to be able to pay any judgment whatsoever.

Defendant is representing herself, pro se, and is not incurring fees to an attorney.

**There is No Adverse Effect on the Public Interest — the Public only benefits**

Defendants for takedown notices are harming both plaintiffs continued development of a potentially popular videogame as well as the entire economy that is built upon reviewing, playing, and sharing the experiences of the game.

An Order requiring plaintiffs works and Plaintiffs' customers' works to be restored to publicly available and viewable condition will only restore all of their accounts to good standing but will also begin to heal Plaintiffs public image, further justly restoring Plaintiff while also protecting the public from further harm.

**The Relief sought by Plaintiff is narrowly tailored**

Plaintiffs seek only the Order necessary to halt Defendants irreparable harm while plaintiff seeks a polemic area injunction and/or other court action as necessary to restore and preserve the status quo.

Plaintiffs seek to temporarily restore sales and marketing of its Works as well as the account standing and availability of the works of its customers and community.

Plaintiffs also request that Defendant be ordered to provide a list of all takedown notices she has issued so that recipients of said takedown notices can be notified of this Court's Order.

**Plaintiff's recommended Bond**

Defendant is incurring no expense in issuing false takedown notices while Plaintiff scrambles to handle every one of Defendants public relations fires.

Plaintiff does not foresee that Defendant will incur significant expenses in defending this application for a temporary restraining order. Defendant is unrepresented.

Plaintiff does not foresee that Defendant's monetary damages would be significant should it later be adjudicated that Defendant was owed some money under the parties' contract.

Plaintiff therefore recommends a bond of $3,500.00, the amount which was withheld from Defendant due to her incomplete obligations under the parties' contract.

**Conclusion**

Because Defendant has caused and will likely continue to cause substantial injury to both Plaintiffs and to Plaintiffs customers, and because Defendant has issued threats of serious bodily injury and harm to plaintiffs and its counsel, Plaintiffs respectfully request that this Court issue a Temporary Restraining Order and Preliminary Injunction to restore the status quo and protect both Plaintiffs and its customers from further injury during the course of this litigation.

Respectfully Submitted,

/s/leonardjfrench

Leonard J. French, Esq.
PA ID: 312413
442 Hamilton St #9125
Allentown, PA 18105
P: 610-537-3537
F: 888-262-0632
E: ljfrench@leonardjfrench.com
Attorney for Plaintiff

**CERTIFICATE OF SERVICE/COUNSEL**

I hereby certify that I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, as well as providing a copy of this document by email to defendant at alexmauermusic@gmail.com by previously granted consent (ECF Doc. 3, Affidavit of Service Exhibit A) under F.R.C.P. 5(b)(2)(E).

I hereby further certify that I notified Defendant of the Courts scheduling of the matter at the below date, time and location via the same email address.



HEARING NOTICE - Thursday 7/13/2017 11 A.M.

me <ljfrench@leonardjfrench.com>    Jul 11, 2017, 10:56 AM

to: Alex Mauer <alexmauermusic@gmail.com>

HEARING NOTICE - Thursday 7/13/2017 11 A.M.

Courtroom 13B
James A. Byrne U.S. Courthouse
601 Market Street
Philadelphia, PA 19106

Alex,
The judge has granted my request for a hearing this Thursday on our Temporary Restraining Order Application. I am currently finishing the application and will be filing it and providing a copy to you later today.

This is your notice of the time and location of the hearing should you wish to appear before the judge and state your position on my request.

Best,
Leonard French, Esq.

Respectfully Submitted,

*/s/leonardjfrench*
Leonard J. French, Esq.